## FORT WORTH & DENVER CITY RAILWAY COMPANY V. R. B. MASTERSON ET AL.

### No. 1064. Decided March 6, 1902.

**1.—Live Stock—Quarantine Line—Federal and State Regulation.**

The power of the Live Stock Sanitary Commission of Texas, under articles 5043c, 5043k, Revised Statutes, to establish a quarantine line against "Texas or splenetic fever" is so limited as to require them to conform to or adopt the quarantine line established by the United States Department of Agriculture, and their action in establishing a different line is invalid. (Pp. 266, 267.)

**2.—Same—Carrier—Receiving from Connecting Line.**

A railway company is not justified in refusing to receive and transport cattle over its line, on a contract of through shipment made by another road over it and connecting lines, as required by article 4535, Revised Statutes, by the fact that such shipment was from a point without to one within the quarantine lines established by the Texas commission, where both the point of shipment and of destination were without the lines established by the federal authorities. (Pp. 267, 268.)

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

*Stanley, Spoonts & Thompson,* for appellant.—The quarantine line established by the Texas Live Stock Sanitary Commission, prohibiting these cattle from being transported into Baylor County prior to November 15, 1899, was authorized by the law of Texas and a valid exercise of its police power and of the power conferred by law on said commission.

It being the manifest active duty and intention of the State Legislature to protect all the cattle of this State from contagion and destruction by splenetic fever and to place that duty on the commission and to clothe it with all the powers necessary to discharge that sovereign duty, it is unreasonable to suppose that the State abdicated or surrendered that governmental function to the national government and limited the powers of the commission to the perfunctory duty of ascertaining the location of the national line and adopting it as the State quarantine line, and leaving vast herds south of the national line wholly exposed and liable to be destroyed.

That the surrender of a function of government is not to be inferred, except upon the clearest expression of an intent to do so, see Wheeling Bridge Co. v. Wheeling, 138 U. S., 287. A State can not surrender its police power, nor can the nation assume it. Beer Co. v. Massachusetts, 97 U. S., 25; Cooley Const. Lim., 706. Power to protect life and property is not and can not be taken away by national law. Railway v. Beckwith, 129 U. S., 29. Commerce must give way to reasonable police regulations. License Cases, 5 How. (U. S.), 504.

To conform to the national line does not, in the sense used, mean to adopt it, but to recognize its existence to the full extent within and without the State and to obey and not violate it, and to quarantine against districts and counties which it proclaims infected, and for the same length of time, by same character of regulation. To conform is to be similar in import, to shape in accordance with, to bring into harmony or agreement with; to conform in character. Webster's Dict., "Conform," "Conformity."

The State regulation was reasonable and necessary to protect the cattle and range in Baylor County from the danger of infection and the spread of a dangerous and deadly disease, which danger was both real and apparent, and could only be prevented by excluding cattle capable of communicating or spreading the disease, and is not a regulation of commerce, but a sanitary law. Pauperism, crime and disease are not commerce, but are incident, and the State may lawfully prevent their importation, although it incidentally affects commerce. License Cases, 5 How. (U. S.), 504; City of New York v. Miln, 11 Pet., 102; Morgan v. Louisiana, 118 U. S., 455; Railway v. Beckwith, 129, U. S., 29; Cooley Const. Lim., 706.

Said quarantine law is a penal sanitary law, and although appellant's line did not enter the district under quarantine, it would have been guilty of violating it and liable to penalties if it had accepted the cattle under the contract for carrying them into said district or in any way assisted plaintiff to do so with knowledge of the fact that a violation of said law was intended, and appellant was not legally compelled to become either a principal or an accomplice to such a crime.

That intermediate connecting carriers are liable to punishment, see 1 Rapalje Dig. Ry. Cases, 790, citing Railway v. Freeman, L. R. 12, Q. B. D., 629; 53 L. J. M. C., 79; 32 W. R., 830; 48 J. P., 660.

That it is a crime to violate, or attempt to violate or evade the quarantine regulations of live stock: Penal Code, art. 824, c, d; Penal Code, "Accomplice," art. 79.

No person can be required to make or perform a contract in violation of law or of the legal rights of another.

Whether quarantine law was valid or not, plaintiff and appellant would be guilty of a wrong and liable to damages resulting to cattle owners in Baylor County for carrying or assisting to carry these cattle there with notice that they would probably communicate or cause Texas fever there. Wintz v. Morrison, 17 Texas, 372; Railway vs. Haber, 169 U. S., 613; Grimes v. Eddy, 126 Mo., 168; Kinnish v. Ball, 129 U. S., 217; Hawks v. Locke, 139 Mass., 205; Mill v. Railway, 41 N. Y., 619; Hite v. Blandford, 45 Ill., 9; Cooley on Torts, 2 ed., 724.

*W. P. McLean* and *D. W. Humphreys,* for appellee Masterson.—The Sanitary Commission can establish no quarantine line against Texas or splenetic fever, unless the same "is so fixed as to conform to the Federal quarantine established, or that may be established, by the United States Department of Agriculture." The law also makes it the duty of the Sanitary Commission of Texas to establish rules and regulations against Texas, or splenetic fever, only by joint co-operation with quarantine officers of other State and Territories and with the Secretary of Agriculture of the United States. The question involved in this case is not the right of the State to make its own quarantine rules, but it is rather the power of the Sanitary Commission to establish lines without authority of the State and contrary to the law creating and prescribing the duties and powers of said commission.

*N. H. Lassiter* and *C. M. Templeton,* for Southern Railway Company, appellee.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the Second Supreme Judicial District has certified to this court the following statement and question:

"The above styled case is pending before us on an appeal from a judgment in favor of appellee and against appellant for damages because of its refusal to receive and transport two cars of cattle shipped from Leighton, Ala., on a through bill of lading to Seymour, Baylor County, Texas, made by the Southern Railway Company. The cattle were hauled over the Southern Railway and connecting lines to Fort Worth, and were there tendered to appellant by the Cotton Belt Railway (which road hauled them into Fort Worth) to be carried and delivered to appellant's next connecting line of railroad in the direction of said place of destination. Appellant's line of railroad connected with the Wichita Valley Railroad at Wichita Falls, and the latter is the only railroad running to Seymour. It was an independent line of railroad. In carrying said cattle en route to Seymour, appellant would necessarily have

delivered or tendered them to said Wichita Valley Railway at Wichita Falls. On being tendered the cattle at Fort Worth by the Cotton Belt Railroad, appellant refused to receive them on the ground that there was in force a quarantine line against Texas fever established by the Live Stock Sanitary Commission of Texas, which quarantine was fixed along the east line of Baylor County and lay between Wichita Falls and Seymour. Appellant's line of railroad between Fort Worth and Wichita Falls did not cross said quarantine line, nor in anywise infringe on the same. Appellant proposed to receive said cattle from its said connecting line, the Cotton Belt Railroad, and to carry them to Wichita Falls, under a new contract by which the cattle were to be consigned to the owner at Wichita Falls, but refused to receive them under the through bill of lading and refused to receive them to be carried to its connecting line at Wichita Falls. Appellee declined to make a new contract as proposed by appellant. The cattle were unloaded by the Cotton Belt at Fort Worth in consequence of the refusal of appellant to receive them and were sold by the latter company as provided by law.

"At the time referred to, there was established and in existence another quarantine line against Texas fever by authority of the Secretary of Agriculture of the United States, which was west of Baylor County, and which was not crossed by the railroad in going from Fort Worth or Wichita Falls to Seymour. The difference between the said two quarantine lines was that the State quarantine line placed Archer, Throckmorton, and Baylor counties in the protected territory and the national line left them on the outside of said protected territory. The restrictions and regulations pertaining to each line prohibited the transportation of cattle from territory south and east of the respective lines to territory north and west of said lines. Each of said lines provided alone against Texas or splenetic fever. Appellee Masterson's ranch was west and north of the Federal line and in King County. Seymour was the nearest railroad station to said ranch.

"Appellant was not a party to the contract of shipment and was only liable, if at all, by reason of being an intermediate connecting line in the chain of railroads between the initial and terminal points of said haul. Article 4535, Revised Statutes of Texas, 1895, provides in substance that every railroad in this State must receive freight from connecting lines when tendered and transport the same to destination if on its line, and if beyond its line, to the next connecting line. Assuming that this statute applied to the transaction under consideration, unless an exception existed in the fact that the State quarantine line against splenetic fever or Texas fever justified the refusal to receive the shipment when tendered to appellant at Fort Worth, the question arose as to the validity of the State line, and if valid, whether the appellant was justified in its refusal to take the shipment in view of the fact that the quarantine line was located beyond its haul of the same.

"The evidence in the record shows that Masterson, before purchasing the cattle, made inquiry of the Southern Railway Company at Leighton

as to whether there were any quarantine restrictions in the way of shipping them through to Seymour. He purchased the cattle upon the assurance of said company that there was no quarantine line to prevent the cattle being carried directly through to Seymour. He brought this action against the Southern Railway Company and the Cotton Belt for his damages, alleging substantially a breach of warranty on the part of the Southern Railway because of stoppage of the shipment on account of the quarantine. These defendants impleaded appellant as a party defendant, alleging that its refusal to receive the cattle was illegal, because the ground of refusal, to wit, the said State quarantine line, was insufficient, because the State Sanitary Commission had no authority to establish said line east of Baylor County, it being different from the national line. Second, because, if valid, appellant could have carried the cattle to the next connecting line en route to destination without in anywise violating said quarantine. These two defendants prayed for judgment over against appellant for whatever sums plaintiff might recover against them. Plaintiff, by supplemental petition, adopted that part of said two defendants' answers and prayed in the alternative against the Southern and Cotton Belt railways for his damage, if there existed a legal quarantine; and, if not, then against appellant for his damages.

"The foregoing facts and issues rendered the validity or invalidity of the said State quarantine line the controlling question as to the liability of appellant.

"It becomes material in determining the question of the validity of that line to decide whether the power conferred in article 5043c, Revised Statutes 1895, upon the Live Stock Sanitary Commission of Texas, to protect the domestic animals of this State from contagious or infectious diseases of a malignant character, is limited by article 5043k, requiring conformity with the Federal line, in establishing a quarantine line against Texas or splenetic fever only. Under the articles named, has the State Commission power or authority to establish a quarantine line against Texas or splenetic fever different in its location from the one established by the National authorities against Texas or splenetic fever? And was the quarantine line established by the State authorities east of Baylor County void because of a want of authority to make said line? Do articles 5043c and 5043k prohibit the State Commission from making a quarantine line against Texas or splenetic fever different in respect to its location from that established by the Secretary of Agriculture against Texas or splenetic fever? And in this case was appellant warranted and justified in its refusal to receive and carry said shipment to its next connecting line en route to Seymour?"

The articles of the Revised Statutes referred to in the question read as follows:

"Art. 5043c. It shall be the duty of the commission provided for in article 5043a to protect the domestic animals of this State from all contagious or infectious diseases of a malignant character, whether said dis-

eases exist in Texas or elsewhere; and for this purpose they are hereby authorized and empowered to establish, maintain, and enforce such quarantine lines and sanitary rules and regulations as they may deem necessary. It shall also be the duty of said commission to co-operate with live stock quarantine commissioners and officers of other States and Territories, and with the United States Secretary of Agriculture, in establishing such interstate quarantine lines, rules, and regulations as shall best protect the live stock industry of this State against Texas or splenetic fever," etc.

"Art. 5043k. Any quarantine line that may be fixed by the Live Stock Sanitary Commission against Texas, or splenetic fever, shall be so fixed as to conform to the Federal quarantine line established, or that may be established, by the United States Department of Agriculture."

By the first quoted article, the commission was directed to co-operate with the "United States Secretary of Agriculture," but after four years' experience that law was changed by the enactment of article 5043k, whereby the power of the commission to establish a quarantine line against "Texas or splenetic fever" is limited to "conformity" with the line established or to be established by the "Department of Agriculture for the United States." It was the intention of the Legislature, in the enactment of article 5043k, to take from the commission discretion in fixing a quarantine line against Texas or splenetic fever and to require the commission to adopt the line then established or which might thereafter be established by the Department of Agriculture of the United States. The word "conform" was used in the sense of "comply with," "adopt." The purpose was to make one line. We can not conceive how the commission could so fix the line as to conform to a line established by the "United States Department of Agriculture" except by adopting the latter line. If this was not the intention, why require conformity to lines which might thereafter be fixed by officers of the United States?

We answer: The line established by the commission of Texas not being in conformity with the line established by the Department of Agriculture of the United States as quarantine against "Texas or splenetic fever," was without authority of law and void.

Article 4535, Revised Statutes, provides: "All railway companies doing business in this State shall be and they are hereby required to receive from all other railway companies with which they may connect at the State line of this State, or at any place within this State, or at any or all places where they may cross the line of any other railway doing business or operating a line of railway in this State, all freights and passengers coming to it from such connecting line and destined to points on its line, or to points beyond its line or any other line of railway with which said line may connect or cross, and shall transport the same over its said line to destination, if on its line, or to the next connecting or cross line in the direction of destination, if beyond its line, without delay or discrimination in favor of or against the line from which such freight or passengers are received," etc. By the terms of this statute,

the appellant was required to receive the cattle from the Cotton Belt .Railroad and to carry them to the connecting line at Wichita' Falls, which would have been required to receive the cattle from the appellant.

We answer further: The existence of the quarantine line established .by the sanitary commission of Texas afforded no justification to the ap-.pellant for refusing to receive and carry the cattle of the appellee to Wichita Falls.

We, however, do not intend to intimate that if that line had been valid, its existence would have excused the refusal to carry the cattle to a point not within the forbidden territory. That question is not cer-tified.